UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

OLIVIA THOMPSON,

    Defendant.
                                                   /

Case No. 11-20493

Honorable John Corbett O'Meara

## OPINION AND ORDER
## DENYING DEFENDANT THOMPSON'S MOTION TO SUPPRESS EVIDENCE

This matter came before the court on defendant Olivia Thompson's April 30, 2012 motion to suppress evidence. Co-defendants Donnell Demon Jackson and Leon Antonio Johnson, Jr. joined in the motion. The government filed a response June 1, 2012. The court heard oral argument June 14, 2012; took the matter under advisement; and gave the parties additional time to file supplemental briefs. Defendant Thompson filed a supplement September 21, 2012; the government filed a brief October 16, 2012; and defendant Thompson filed a second supplemental brief December 4, 2012. Since the time of oral argument, a third superseding indictment was filed August 15, 2012; and a fourth superseding indictment was filed March 11, 2013.

### BACKGROUND FACTS

Defendant Olivia Thompson and others have been charged with conspiring to possess with intent to distribute and to distribute heroin and cocaine. Some of the evidence the government intends to introduce at trial was seized pursuant to a search warrant issued by a state court judge around 1:15 a.m. on July 21, 2011, at a residence in Southfield, Michigan. Seized during the search

were three kilograms of heroin, one kilo of cocaine, a handgun, and miscellaneous narcotic processing materials and equipment.

Defendant Thompson, whom the parties agree has standing, filed her motion to suppress asserting that the search and seizure were conducted in violation of her constitutional rights for the following reasons: 1) there was no probable cause to search the premises; 2) there is no evidence that officers first attempted to seek or obtain a warrant from a federal magistrate judge; 3) the warrant was executed at night; 4) the confidential source is a disgruntled, former girlfriend of defendant Jackson, and that information was not included on the affidavit; 4) the warrant was signed after entry to the premises; and 5) additional reasons in support of probable cause that were included in the affidavit have been redacted, and the government refuses to disclose them.

Defendant Thompson then supplemented her motion to suppress and renewed her request for a <u>Franks</u> hearing after the government released the grand jury testimony of the confidential source. She alleges that the confidential source gave false information to the government and that the government knowingly and intentionally, or with reckless disregard for the truth, relied on this information in obtaining the search warrant.

## **LAW AND ANALYSIS**

Regarding the issue of lack of probable cause to search the premises, Defendant contends that there were no allegations in the affidavit to establish a nexus between the premises on Evergreen in Southfield and the criminal activity being investigated. Although it was disclosed that the confidential source (CS) told agents that Defendant #1 (D-1) used various stash houses to store his drugs, the location of the stash houses is not disclosed on the affidavit. Furthermore, the reliability of the CS is one of the circumstances to be considered in determining whether under the totality of

the circumstances probable cause exists for the search. In this case, Defendant believes the CS is a former girlfriend of D-1. The affiant did not attest to personal knowledge of the CS's past reliability. Also, there is no statement that the CS or anyone else observed criminal activity first hand at this residence. In addition, the affidavit must contain "substantial independent police corroboration." In this case police had observed D-1 coming and going from the premises, and one time performed a stop after he had left and found a large sum of cash in his car.

The affidavit, however, provided the following facts: 1) that a March 2, 2011 "trash pull" conducted at D-1's residence in Troy resulted in the seizure of a receipt for a money counter, a handwritten ledger revealing a total of $381,000.00, and other items frequently seen in bulk currency packaging; 2) that in a May 22, 2011 traffic stop of D-1, police seized $19,700 after D-1 tried to conceal it in his pants and in a female passenger's purse; 3) that CS, who had maintained a personal relationship with D-1 for over a year, indicated that he distributed large quantities of cocaine and heroin in the Detroit metropolitan area and had heard him discussing these transactions with associates; 4) that CS provided telephone numbers for co-defendants Johnson and Davis; 5) that agents corroborated CS's information by finding that both Johnson and Davis had prior arrests and/or convictions; 6) that CS was present along with D-1 when a residence was searched and several ounces of crack cocaine and firearms were seized in 1994; 7) that during June and July 2011 agents conducted multiple surveillances of the premises and that the premises is listed as D-1's residence in Secretary of State records; 8) that on June 29, 2011, the other three defendants were all observed at the premises at the same time; 9) that on July 5, 2011, defendant Thompson was observed leaving the Evergreen address and driving to Jackson's residence in Troy, and after a short time, Jackson drove off in Thompson's vehicle; 10) that on July 6, 2011, Davis was observed

3

arriving at the Evergreen address, staying a short time and leaving; 11) that on July 20, 2011, Johnson was the subject of a vehicle stop resulting in the seizure of $2,700 as well as items commonly recognized as consistent with the preparation and packaging of illegal drugs; 12) that after the July 20 stop involving Johnson, defendant Thompson was observed leaving the Evergreen residence driving in an erratic manner; and 13) that later on July 20, 2011, the CS contacted an agent and indicated, among other thing, that it was Jackson and his associates' intention to move the drugs that evening.

The primary focus of defendant Thompson's motion centers on the information supplied by the CS. Generally, an informant's information must be shown to be reliable to support the issuance of a search warrant. United States v. Thomas, 605 F.3d 300 (6th 2010). Corroboration can be used as a substitute for a showing of a history of reliability. United States v. Jackson, 470 F.3d 299 (6th Cir. 2006).

The government argues that the surveillance activity conducted near the premises, coupled with querying of the real property indices, provided ample corroboration to the CS's information. Defendant Thompson has requested an evidentiary hearing to go beyond the information contained in the affidavit. However, to be entitled to such a hearing, there must be a substantial preliminary showing that the affiant's statements were deliberately false or demonstrated a reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154 (1978). In this case, there has been no such showing. Regarding the portions of the affidavit that were redacted, the government has offered to show them to the court *in camera*.

As for the technical bases upon which defendant Thompson challenges the search, generally such technical violations do not rise to the level of constitutional infirmity requiring application of

4

the Exclusionary Rule. United States v. Abdi, 463 F.3d 547 (6th Cir. 2006). Defendant Thompson first complains that the search warrant was signed by a state court judge instead of a federal magistrate judge. Rule 41 of the Federal Rules of Criminal Procedure permits that "a magistrate judge with authority in the district–or if none is reasonably available, a judge of state court of record in the district–has authority to issue a warrant to search for and seize a person or property located within the district." Defendant Thompson suspects the agents were "judge shopping," as the warrant was signed by a state court judge from Southgate, not Southfield where the premises were located. However, the agents did explain in the affidavit that because of the lateness of the hour, the information from the CS that D-1 was intending to move the drugs soon and that time was of the essence, the court would likely find the agents' actions reasonable under the circumstances.

Even if the court were to find that Rule 41 had been violated, the finding would not necessarily justify suppression of the evidence. "[S]uppression is an appropriate remedy only when the violation [of Rule 41] is either of constitutional dimensions . . ., is prejudicial, or is intentional." United States v. Chaar, 137 F.3d 359, 362 (6th Cir. 1998). There appears to be no showing here that the technical violation in this regard is prejudicial or intentional.

Defendant Thompson also complains of another violation–that the warrant was executed at 1:15 a.m. Rule 41 requires that searches be conducted during the daytime. However, 21 U.S.C. § 879 permits the execution of search warrants involving controlled substances "at any time of the day or night if the judge or United States Magistrate Judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time." In Gooding v. United States, 416 U.S. 430 (1974), the United States Supreme Court held that the provisions of § 879 prevail over Rule 41. The Court further held that § 879 does not require a

5

separate showing of probable cause to justify a nighttime search. Id. at 458. What is required is a showing that the property or contraband will be found on the premises at that time.

In this case justification for a nighttime search was demonstrated in ¶ 22 of the affidavit which states, "The CS reported that he/she learned at this time that it was the intention of JACKSON and his associates to make efforts to move the drugs that same evening."

Ultimately, there is no showing in this case that the affidavit in support of the search warrant was a "bare bones" affidavit. There is no showing that the officers and agents presented false or misleading information or engaged in a reckless disregard for the truth when presenting the affidavit to the state court judge. Most importantly, there is no showing that the officers' and agents' reliance on the warrant was unreasonable.

In her supplemental brief and renewed request for a Franks hearing, defendant Thompson alleges that the CS provided conflicting testimony to the grand jury and that the police officer either knowingly and intentionally, or with reckless disregard for the truth, included the CS's false statements in the search warrant. The court agrees with the government that the difference in the grand jury testimony and the information incorporated in the search warrant may be the basis for cross examination; however, it cannot constitute the "substantial preliminary showing" required for a Franks hearing. The United States Supreme Court in Franks, supra, held that there is a presumption of validity to the affidavit supporting a search warrant. The deliberate or reckless falsity, which can be used for impeachment, is that of only the affiant, not that of a non-governmental informant. If, after examining the remaining contents of the search warrant, the court finds they support a finding of probable cause, no Franks hearing is required.

In this case the allegedly false information was provided by the CS, not the affiant who reasonably and in good faith relied on the information in procuring the search warrant. Furthermore, the CS's information was not the only basis upon which the warrant was issued; rather, it was corroborated by an extensive factual record.

## **ORDER**

It is hereby **ORDERED** that defendant Thompson's April 30, 2012 motion to suppress evidence and request for an evidentiary hearing is **DENIED.**

s/John Corbett O'Meara<br>
United States District Judge

Date: July 16, 2013

 

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 16, 2013, using the ECF system.

s/William Barkholz<br>
Case Manager